## ILLINOIS BANKERS' LIFE ASS'N v. FLOYD. (No. 133–3027.)

(Commission of Appeals of Texas, Section B. June 9, 1920.)

1. **Insurance** 640(4) — Notice of death presumed, where failure to give notice not pleaded.

In an action on a life insurance policy, where insurer has not pleaded failure to give notice of death of insured, it will be presumed that such notice was given, in view of Rev. St. 1911, art. 5714.

2. **Insurance** 559(2)—Proof of death not required, where insurer denies liability.

Where insurer denied all liability beyond the amount paid it, proof of death was not required, and would have been a useless formality.

3. **Tender** 22—Plea of tender by insurer held not necessary in action on life policy.

In an action on a life policy, where it appeared that plaintiff had been tendered, through her attorney, more than three months before the suit was brought, the full amount the company had received, and liability for which it admitted, no plea of tender was necessary; the only purpose of pleadings being to notify the opposing party of what is expected to be proved.

4. **Insurance** 640(3)—That insured died by his own hand held sufficient allegation of suicide.

In an action on a life insurance policy, an allegation by defendant that insured "died by his own hand" *held* equivalent to alleging that he intentionally took his own life.

5. **Insurance** 446 — Suicide forfeits policy, notwithstanding insured morally irresponsible.

An insurance policy containing a suicide clause is forfeited by the suicide of insured, notwithstanding that his mind was impaired to the extent that he was not morally responsible for his act.

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Pleading ⊙⟹21—Inconsistent matters may be pleaded, if at the same time and in due order of pleading.**

There is no qualification or abridgment of the rights to plead matters that are inconsistent, if they be pleaded at the same time and in due order of pleading.

**7. Insurance ⊙⟹640(3)—Answer denying liability, except for stated amount, held good on demurrer.**

In an action of a life insurance policy containing a suicide clause, where it appeared that insured had committed suicide 33 days after the issuance of the policy, an answer denying liability for the face of the policy and admitting liability for repayment of all insurer had received from insured, with tender of such amount, *held* good on general demurrer.

**8. Insurance ⊙⟹515 — Amount payable under policy held validly reduced by provision "promising a benefit."**

Under Rev. St. 1911, art. 4742, forbidding provision for any mode of settlement at maturity of an insurance policy of less value than the face of the policy, except that a company may issue a policy "promising a benefit less than the full benefit" in case of insured's suicide, a policy provision was sufficient, as "promising a benefit," to validly reduce the amount payable under the policy, where the policy provided for payment "of the contribution to the mortuary fund," in case of suicide.

**9. Appeal and error ⊙⟹931(3) — To support judgment, facts presumed found.**

It must be presumed that the trial court found all the facts necessary to support its judgment.

**10. Insurance ⊙⟹672—Plaintiff held entitled to amount tendered by company.**

Where, although plaintiff in action on insurance policy did not pray in the alternative or otherwise for recovery of the lesser amount for which the insurance company admitted liability, yet a ground of her motion for new trial was alleged error of the trial court in not rendering judgment for her for that amount, judgment should have been rendered for her for such amount.

**11. Costs ⊙⟹42(8) — Costs to be adjudged against plaintiff refusing tender of amount admitted and found due.**

Where plaintiff, suing on an insurance policy, made no prayer for recovery of the lesser amount for which defendant admitted liability, and when it was tendered by the company it was refused by her, costs should be adjudged against her.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by Lula Viola Floyd against the Illinois Bankers' Life Association. A judgment for defendant was reversed by the Court of Civil Appeals (192 S. W. 607), and defendant brings error. Reversed and rendered.

Pat M. Neff and J. N. Gallagher, both of Waco, for plaintiff in error.

Paul Steed, of Stephenville, and Bean & Kleet, of Lubbock, for defendant in error.

KITTRELL, J. Plaintiff in error issued a policy of insurance on the life of the husband of defendant in error October 8, 1914, and the premium, $42, was paid. The policy was for $3,000. The insured died by his own hand November 10, 1914. The jury so found, and further found that he took his own life intentionally—a fact concerning which there was practically no dispute.

The plaintiff alleged the contract, and the death of the insured, and demand for payment, and refusal, and prayed judgment for $3,000, but did not plead in the alternative for recovery of the mortuary contribution. The defendant pleaded as a defense to the action a provision of the policy reading as follows:

"If within two years from the issuing of any certificate or policy the member or insured, whether sane or insane, shall die by his own hand, the liability of the association shall be limited to the amount of the mortuary contribution of such member or policy holder."

There was no exception addressed to the pleading by plaintiff. In reply she pleaded in substance that when the insured took his own life he was—because of a number of reasons assigned—not responsible for the act. The defendant addressed no exception to that plea, and in pursuance of it the court submitted of his own motion a special issue (No. 3) conforming to that plea, and the jury to such issue responded in the affirmative, viz. that the insured was mentally irresponsible.

The defendant did not plead that the insured took his own life intentionally, and to the failure or omission to so plead plaintiff excepted, which exception was overruled, and plaintiff excepted. Defendant did not plead failure to give notice of the death of the insured as required by the policy, nor did it plead what the amount of the mortuary fund was, nor plead that there was a mortuary fund, nor did it plead tender of any amount.

It was, however, proved by plaintiff by the evidence of one of her attorneys that on or about July 10, 1915, the sum of $42, the full amount of the premium, was tendered him for plaintiff, and was by him refused. It was proved, also, in the same way, that accompanying the tender was a letter denying liability for the $3,000 on account of the suicide.

Those facts are set forth at this point, both because due order of statement requires that it be done, and because, in the concluding part of the original opinion of the Court

of Civil Appeals (192 S. W. 607), is the following language:

"There is some evidence tending to show that a tender was at one time made to appellant's attorneys, but the sum tendered does not appear from the statement of facts."

The judge who wrote the opinion must have overlooked a page in the statement of facts. It is shown therein by the evidence of one of plaintiff's attorneys that on or about July 10, 1915, three months before suit was filed the cashier of a bank, whose name is given, tendered to the attorney $42, the whole amount received by the company from the insured, and that the tender was by the attorney refused.

The trial court rendered judgment for plaintiff on the verdict of the jury, but on hearing motion for new trial set aside the verdict and judgment, and rendered judgment for defendant. The Court of Civil Appeals of the Seventh District reversed that judgment, and rendered judgment for plaintiff in the full amount of the policy.

### Opinion.

The parties will, for the sake of convenience and brevity, be referred to as they were in the court below.

[1] Not having pleaded failure to give notice of the death of the insured, it was presumed such notice was given. Article 5714, R. S.

[2] Furthermore, the defendant having denied all liability beyond the amount paid the company, such proof was not required, and would have been a useless formality. East Texas Fire Ins. Co. v. Coffee, 61 Tex. 293; Knickerbocker v. Pendleton, 112 U. S. 696, 5 Sup. Ct. 314, 28 L. Ed. 866; National, etc., v. Thomas, 10 App. D. C. 277.

[3] The only purpose of pleading being to notify the opposing party of what is expected to be proved, and plaintiff having been tendered, through her attorney, more than three months before suit was brought, the full amount the company had received, and liability for which it admitted, no plea of tender was necessary. The pleading of defendant, to which, as has been stated, no exception was taken, was equivalent to saying that defendant was not, because the insured died by his own hand, liable for the $3,000 insurance, but was liable for the $42.

No objection appears to have been made to the form or manner or amount of the tender, and the inference is deducible from the record that the refusal was based on the belief of plaintiff's attorneys that their conception of the law as reflected in the supplemental petition, and by their insistence on judgment for plaintiff on the finding of the jury on issue No. 3, would necessitate recovery in plaintiff's favor for the face of the policy. Since the Court of Civil Appeals expressly states that "we do not base the disposition of the appeal on the question of insanity," it is not necessary to enter upon any extended discussion of the law or the pleading as relates to that question.

[4] It is sufficient to say that the pleading of the defendant was as broad as the terms of the policy, and that to allege that the defendant "died by his own hand" was equivalent to alleging that he intentionally took his own life. Bigelow v. Berkshire, etc., 93 U. S. 284, 23 L. Ed. 918.

[5] There are many cases in the reports of Texas, and in those of other states, similar to this, and it may serve a useful purpose to say that the contention of plaintiff that, if the mind of the insured was impaired to the extent that he was not morally responsible for the act of taking his own life, the policy was not forfeited, is not sound in law. The law was so declared in Mutual Life Ins. Co. v. Terry, 15 Wall. 580, 21 L. Ed. 236, and that holding has been followed in this state (Life Ins. Co. v. Walden [Civ. App.] 26 S. W. 1012; Life Ins. Co. v. Hayward, 88 Tex. 322, 30 S. W. 1049, 31 S. W. 507); but it is now settled law in this state that, if the exception in the policy be that the company shall be exempt from liability "if the insured dies by his own hand, sane or insane," there can be no recovery. Mutual Reserve, etc., v. Payne (Civ. App.) 32 S. W. 1063; Parish v. Mutual Benefit, etc., 19 Tex. Civ. App. 457, 49 S. W. 153; Grand Fraternity v. Melton, 102 Tex. 399, 117 S. W. 788.

The opinion of the Court of Civil Appeals has been most carefully examined and analyzed, and that court appears to us to have based its conclusion in a large measure upon its construction of the meaning and effect of article 4742 of the Revised Statutes, and, following upon and collateral to that construction, upon the matter of pleading. That article of the statute, so far as it is quoted, construed, and applied, reads as follows:

"No policy of life insurance shall be issued or delivered in this state, or be issued by a life insurance company incorporated under the laws of this state, if it contains any of the following provisions: * * *

"3. A provision for any mode of settlement at maturity of less value than the amounts insured on the face of the policy, plus dividend additions, * * * less any indebtedness to the company on the policy, and less any premium that may, by the terms of the policy, be deducted: Provided, that any company may issue a policy promising a benefit less than the full benefit in case of the death of the insured by his own hand while sane or insane, or by the following stated hazardous occupations."

At the risk of extending this opinion to a greater length than is desirable, we will as a matter of justice to the Court of Civil Appeals, liberally, but carefully and accurately, paraphrase and summarize the grounds on which that court bases its holding. Before

proceeding so to do, it will be helpful to state in simple, ordinary language what the contract was, so that that material fact may be kept in view. Stated in condensed form, it was that in consideration of $42 paid, and the payment of a like amount annually thereafter, the company would, in event of the death of the insured otherwise than by his own hand within two years from the date of the policy, pay plaintiff $3,000, but if the insured did die by his own hand, sane or insane, within two years from the date of the policy, the company would be responsible for, and would pay only, the amount of "the contribution of the insured to the mortuary fund."

The Court of Civil Appeals adjudged that the defendant was liable for the full sum of $3,000, and based such judgment upon, as we conclude from a most careful and painstaking analysis of the opinion, the following grounds:

(1) That under article 4742 suicide cannot be set off as a complete bar to the action.

(2) That article 4742 has been enacted since the Payne and Parish Cases supra, were decided, and that article clearly implies that a violation of the suicide clause in the policy shall not be an absolute defense.

(3) That article 4742 gives the company the privilege of fixing the amount at less than the full benefit named in the contract, and the amount named in this contract is "the amount of the mortuary contribution paid to the association by the insured."

(4) That while the defendant pleaded a release from liability under the suicide clause, there is as a matter of fact no such clause in the policy, and under the statute none can be inserted under which the company could be entirely relieved of responsibility.

Before setting forth further the holdings of the Court of Civil Appeals, it is proper to say here that, conceding for the sake of argument that those above set forth are sound, it does not follow that the conclusion reached by that court is correct, because it is based, as we conceive, on a misconstruction of defendant's pleading; therefore on a false premise.

Defendant did not plead the provision of the policy relating to suicide as a ground of entire release from liability. On the contrary, it was in legal effect an admission of liability to the extent of what the company had been paid. It is true the defendant followed that pleading with the further pleading that it was by the suicide of the insured released from any and all liability, on which latter pleading the Court of Civil Appeals lays much stress; but, if it be conceded that these pleas are apparently, or even indeed really, inconsistent, that fact could not give to the latter the effect to destroy or even impair the validity or force of the former.

[6] It is the long-settled law of pleading in this state that:

"There is no qualification or abridgment of the right to plead matters that are inconsistent, if they be pleaded at the same time and in due order of pleading." Fowler v. Davenport 21 Tex. 633; Duncan v. Magette, 25 Tex. 255; Smith v. Sublett, 28 Tex. 163.

The plaintiff insisted most strenuously in the Court of Civil Appeals, as she does in this court, that the stipulation in the policy limiting the liability of the company to the amount of the mortuary contribution does not constitute a "promise," within the meaning of the statute, when it says the company may issue a policy promising less than the full benefit named in the policy. The Court of Civil Appeals evidently disagreed with that contention, since it says:

"The stipulation would be a promise and more; it would be a binding obligation, if it appeared that the insured ever paid to the company any sum whatever as a mortuary contribution, or was bound by the terms of the contract to make such payment."

It then proceeds to say in substance, in this connection, that there is nothing in the pleadings or evidence to show that there had ever been a mortuary contribution, or that any provision had ever been made for one; therefore the promise is to pay something which did not exist, and therefore promised no benefit whatever.

The Court of Civil Appeals further held:

(5) That defendant having failed to plead under the suicide clause the amount of the mortuary contribution, and that it had taken advantage of the statutory privilege, and inserted a clause whereby it could pay a benefit less than the face of the policy, and there being no evidence whatever that there had been a mortuary contribution by the insured, or any other policy holder, the plaintiff should recover the whole amount of the policy.

The Court of Civil Appeals further held:

(6) That "while it is correct as a proposition of law that, if an insurance company proves the amount of its liability to be less than the face of the policy and tenders that amount to the plaintiff, the judgment should be limited to the sum so tendered, yet that proposition has no application here, because appellee did not tender any sum in its pleadings, but, on the contrary, pleaded that by reason of the suicide of the insured "the contract became absolutely null and void, and this defendant was thereby released from any and all liability thereunder."

What we have already said concerning the question of tender, and the rule of pleading recognized and applied in this state, makes unnecessary any discussion of this holding.

From the foregoing summary and analysis of the opinion of the Court of Civil Appeals

it will be seen that the conclusion it reached is based upon what it conceives to be the failure of defendant to properly plead its case.

[7] While it may be conceded that the pleading might have been clearer, more specific and definite, yet in view of the peculiar facts and the language of the contract, and of the further fact that no exception was directed against the manner or form of pleading the provision of the policy relating to the obligation to pay the amount of "the mortuary contribution," we are of the opinion that the pleading was good on general demurrer. It was in effect a denial of liability for the $3,000, and an admission of liability for repayment of all that it had received from the insured, which interpretation of the contract defendant had translated into action, by tendering back $42, all it had received.

[8] With the holding of the Court of Civil Appeals that defendant had promised no benefit we cannot agree. When it tendered the insured the policy containing the provision for payment "of the contribution to the mortuary fund" in case the insured died by his own hand, and the insured accepted the policy and paid the premium, a complete and binding contract was made.

We are not at liberty to ignore any fact which is clearly apparent in the record, and it is obvious that in the space of 33 days which elapsed between the issuance of the policy and the death no mortuary fund could have accrued—certainly none in excess of the whole amount paid by the insured. That the plaintiff was of the opinion that the pleading and evidence identified and fixed the amount recoverable as "the contribution to the mortuary fund" is made evident by the fact that, although she did not plead in the alternative for such recovery, yet the tenth and last ground of her motion for a new trial was that "the court erred in not rendering judgment for her for the amount of the mortuary contribution."

[9] It must be presumed that the trial court found all the facts necessary to support its judgment, and, this being true, it must have found the obvious fact that the whole amount received from the insured by the company had been tendered back, and the tender refused. Manifestly there could have been no recovery of the $3,000 insurance, because that by the terms of the contract had been forfeited; hence there was no ground on which judgment could, under the pleadings or evidence, have been properly rendered for plaintiff for that amount.

Any judgment for the plaintiff would have the effect to take from defendant and give to plaintiff that which by the terms of the contract the act of her husband had deprived her of the right to receive. The judgment of the district court, in so far as it denied plaintiff recovery on the policy, was correct, and the Court of Civil Appeals erred in adjudging to the contrary.

[10] Plaintiff did not pray, in the alternative or otherwise, for recovery of the $42, and when it was tendered her attorney on July 10, 1915, it was refused; but the last ground of her motion for a new trial was alleged error of the trial court in not rendering judgment for that amount in her favor, and in view of the terms of the contract, and the admission by defendant of liability to that extent, judgment should have been rendered in favor of plaintiff for $42 and interest.

[11] However, as plaintiff made no prayer for it, and when it was tendered it was refused, we are of the opinion that the costs should be adjudged against her.

We recommend that the judgment of the Court of Civil Appeals, reversing the judgment of the district court, denying plaintiff recovery for the face of the policy, be reversed, and that the judgment of the district court in that regard be affirmed.

We further recommend that judgment be here rendered for plaintiff—defendant in error here—for $42, with interest at 6 per cent from July 10, 1915, in all $54.50, and that the costs be adjudged against her.

PHILLIPS, C. J. Judgments of district court and Court of Civil Appeals are reversed. Judgment will be entered here for defendant in error for $42, with legal interest from July 10, 1915, and for costs in the district court and Court of Civil Appeals. The costs of this court will be adjudged against her.