**SOUTHWESTERN LIFE INS. CO. v. HOUSTON.**

No. 13813.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 21, 1938.

Rehearing Denied Nov. 11, 1938.

Hamilton, Lipscomb, Wood & Swift, of Dallas, for appellant.

Ira Butler and Cantey, Hanger, McMahon, McKnight & Johnson, all of Fort Worth, for appellee.

SPEER, Justice.

J. M. Houston, Receiver for Universal Motor Company, of Arlington, Inc., instituted this suit against Southwestern Life Insurance Company, for the recovery of $5,000, statutory penalty of 12 per cent and reasonable attorney's fees, on a policy of insurance for $5,000, issued by the above named company, under date of August 28th, 1935, on the life of Thomas Spruance, in which contract of insurance the Universal Motor Company of Arlington, Inc., was named as beneficiary.

Allegations were made that Thomas Spruance died on April 12th, 1937, at a time when all premiums had been paid on said policy and when the contract of insurance was in full force and effect; that notice and proof of the death of insured was duly and timely given, and all other conditions provided for in the policy, necessary to mature said claim, had been complied with; that payment of the full face amount of the policy had been refused by the company. Further allegations were made of due notice in writing and demand for payment more than thirty days before the institution of suit, requisite to a claim for penalty and attorney's fees.

The defendant company answered with general denial, except insofar as it should admit the truth of plaintiff's pleadings; the admissions consisted of plaintiff's right to sue in the capacity stated, the issuance of the policy on the date named on the life of the insured for the benefit of Universal Motor Company of Arlington, Inc., and the death of insured, as alleged.

Defendant specially answered as a defense to plaintiff's claim for the face of the policy and other relief sought, that the policy issued by it contained a provision to the effect that if insured died as a result of self destruction, while sane or insane, within two years from the date of the issuance of the policy, the amount payable under the policy should be the sum actually received by it for premiums and no more, and that its liability was thus limited in case the insured should die from suicide within that time. That Spruance committed suicide on about April 12th, 1937, within two years from the date on which the policy was issued; that $217.90 had been paid to defendant as premiums on said contract of insurance, and that amount, with legal interest thereon, is the total amount due and owing by it, which amount had been tendered to plaintiff before the institution of suit, and was again tendered and paid into the treasury of the court upon the trial.

The case was tried to the court upon an agreed statement of facts; by these stipulations it appears that the policy of insurance on the life of Spruance was issued by the defendant on August 28th, 1935, for the benefit of the Motor Corporation named, in the total sum of $5,000, which policy contained the following provisions: "If the insured shall die by self-destruction, while sane or insane, within two years from the date hereof, the amount payable under this policy shall be the sum actually received by the company for premiums thereon, and no more."

Said policy also stipulated: "This policy is unrestricted as to travel, residence and occupation of the insured, and is incontestable after the first policy year, except for non-payment of premiums."

It was further agreed that Thomas Spruance died by self-destruction on April 12th, 1937, while sane, within two years from the date of the policy, and that at the time of his death no default had been made in payment of premiums. There were further stipulations to the effect that plaintiff could maintain the suit in the capacity alleged; that notice and proof of death had been timely made more than thirty days

prior to the institution of the suit; that defendant had denied liability except as to the sum of $217.90, with interest, which amount was tendered to plaintiff before suit was filed, and again tendered and paid into court at the time of trial; that if plaintiff is liable for attorney's fees, $600 is a reasonable amount therefor. The policy of insurance is attached to the agreement and becomes a part of it.

The court entered judgment for plaintiff for the face of the policy, together with penalty and the amount of attorney's fees conditionally agreed upon. This appeal is from that judgment.

Upon request by appellant, the court filed the following conclusions of law:

"Pursuant to the request of Southwestern Life Insurance Company, defendant in this cause, for the filing of Conclusions of Law, and based upon the agreed Statement of Facts presented to the Court, I conclude as follows:

"1. That J. M. Houston is the duly appointed, qualified and acting receiver of the Universal Motor Company of Arlington, Inc., as successor to Ray McKnight, and as such is authorized to prosecute this suit as plaintiff;

"2. That plaintiff has complied with all policy requirements incident to maintaining this suit;

"3. That all premiums accrued at the time of the death of Thomas Spruance had been paid and that the policy of insurance was in full force and effect on the date of his death;

"4. That the suicide clause under the provision of the policy styled 'Privileges and Conditions' is in conflict with the 'incontestability' clause under the same provision of the policy styled 'Privileges and Conditions' thereby creating an ambiguity in the terms of the policy; that on account of such ambiguity the policy is to be construed strictly against the insurance company and liberally in favor of the insured, and that so construing the policy the 'incontestability' clause supersedes, controls and prevails over the suicide clause;

"5. That the 'incontestability' clause, excluding all the grounds of contest, other than non payment of premiums, comprehends the defense of suicide, and in the absence of suicide as an exclusion within the 'incontestability' clause, the policy became incontestable on account of suicide after one (1) year from its date;

"6. That the contestable period expired before the assertion of any defense or limitation of liability based on suicide, hence, such defense or limitation is not available to defendant, and;

"7. That defendant is liable to plaintiff for the full face amount of the policy, together with statutory penalties of twelve per cent (12%), and together with Six Hundred dollars ($600.00) attorneys' fees, as agreed upon by the parties.

"The above and foregoing Conclusions of Law, having been duly and timely requested, are ordered filed as a part of the record in this case."

From the foregoing conclusions filed by the trial court, it will be seen that the judgment entered was based upon his findings that the "suicide" clause was in conflict with that of "incontestability"; that an ambiguity in the contract was thereby created, resulting in a necessary construction of the written instrument most strictly against the defendant, and, obviously in favor of the plaintiff.

As we view this appeal, the sole question for determination is, whether or not, in view of the incontestable clause in the policy, the suicide clause was effective. The appellant affirms that it was, while the appellee assumes the negative.

In arriving at a conclusion on the point, we are confronted with the admission of both parties that the direct question based upon the facts before us has not been decided by any appellate court of this state, and with many authorities from other jurisdictions which differ as widely as do the poles of the compass. There are cases in this state somewhat analogous to this one, which, in fact, are difficult to harmonize, if it can be done at all.

We must bear in mind the well settled principle of law, that a contract freely entered into between parties must be construed from its four corners; that is, every part thereof must be permitted to stand as written, if it can be done without doing violence to the manner in which the intentions of the parties are expressed without infringing the well settled rules of judicial construction. We also approach the question with the equally well pronounced rule of construction in mind, that if the language employed by an insurance company in its contracts is ambiguous, then it must be most strongly construed against the company and in

favor of the insured; nor do we think our courts have been derelict in rigidly applying that rule.

We believe the two provisions in the policy under consideration are separate and distinct the one from the other; each made for a purpose wholly independent of the other. The incontestable clause, effective after a given time, is one inserted, no doubt, for the protection of the company against fraud and misrepresentations upon the part of the insured while giving the data in an application for insurance, enabling the company to have a limited time in which to investigate the truth or falsity of the statements made, and also to make an attractive sales talk by the solicitor to the applicant. After the expiration of the allotted time, the company is precluded by its contract from contesting its liability upon the grounds it impliedly obligated itself to investigate within the time named. It is legally estopped to thereafter claim a condition existed, which would abrogate the policy, or relieve the company from a full and complete performance of its expressed obligations.

The provision in this policy to the effect that if the insured should die within two years from the date of the policy as a result of suicide, then and in such an event the company should only be responsible under the contract for a sum equal to the premiums theretofore paid, is equivalent to saying that it only insured the life of Spruance to the extent of a sum equal to the premiums paid, if he took his own life while sane or insane, within two years from the date of the policy. This type of contract is permitted under the provisions of R.C.S. Art. 4733. Illinois Bankers' Life Ass'n v. Floyd, Tex. Com.App., 222 S.W. 967.

It is the contention of appellant that the defense thus urged is not a contest of the policy, in violation of the incontestability provision in the contract, but is only an effort on its part to enforce the provisions as agreed upon by the parties when the contract was entered into. The appellee insists that the defense urged is in legal effect a contest of liability after the expiration of one year, which the company obligated itself not to do.

The language used by the court in Howard v. Missouri State Life Insurance Co., Tex.Civ.App., 289 S.W. 114, in which case a writ of error was refused, completely expresses our views on the point involved here. Before we quote from that case, however, it is but fair to say that the court had before it a statement of facts slightly different to those before us, in this: the contract there under consideration contained incontestable and suicide clauses, each limited to one year after the issuance of the policy, while, as stated, in the instant case the former clause was limited to one year while the suicide clause covered a period of two years. In that case, the company had issued its policy on the life of Howard, on February 25th, 1920; it contained provisions very similar to those in this case as pertaining to incontestability and suicide, except, as stated, the clauses were confined to a period of one year; the insured took his own life a little less than nine months after the issuance of the policy; proof of death and demand for payment were made on February 23rd, 1921; full payment was refused by the company; it agreed to pay and tendered the amount of premiums received, as was done in this case. Suit was thereafter instituted for the face of the policy, and the company resisted payment by relying upon the suicide clause in the policy. The opinion does not indicate when suit was filed, and consequently does not show upon what date the company interposed the defensive pleading. In the nature of things, the company had not filed an answer relying upon the suicide clause in the contract within a year from the date of the policy, since the proof of death and demand for payment were not presented until two days before the expiration of the policy year. It was there contended, as was done in this case, that the obligation which precluded a contest of the policy after one year superseded and rendered ineffective the accompanying provision against full liability if death resulted from suicide within one year. The court there, among other things, said [page 115]:

"It is first contended by appellants [beneficiaries of the insured] that the provision that the policy shall be incontestable after one year applies to the defense of suicide, and that, upon failure of the company within that period to institute a suit to contest the policy upon that ground, the company is precluded from setting up the defense of suicide after the expiration of that year. We conclude, however, that this contention can be sustained by only a strained and unreason-

able construction of the contract in question. A contract of insurance is to be construed, like all other contracts, in accordance with its plain terms. It must be viewed from its four corners and effect must be given to all its provisions, where that may be done without doing violence to ordinary rules of law or construction.

"From a reading of the whole contract now before us, it becomes obvious that it was the intention of the parties, clearly expressed, that after the lapse of the first year the insurer is prohibited from contesting the validity of the policy, from abrogating it, from avoiding it, from escaping the liability fixed by its terms upon the insurer; that after the lapse of that period the insurer will be bound by its terms against every defense. And if in this case the insurer had undertaken, after the lapse of one year, to defeat the full liability prescribed in the policy because of some fraud by which the insured obtained the issuance of the policy, then undoubtedly, such defense would have fallen before the incontestability clause, and the contract would have been enforced as written. But such is not the defense now urged by the insurer. On the contrary, the insurer is standing upon the letter and spirit of the contract as written; is seeking to uphold, and not defeat, the contract, the validity of which both parties are seeking to maintain. In short, the insurer is not 'contesting' the policy at all, but is asserting its validity in both form and substance, and the provision of incontestability is inapplicable. Stean v. Ins. Co., 24 N.M. 346, 171 P. 786; Childress v. [Fraternal Union of America], 113 Tenn. 252, 82 S.W. [832], 833, 3 Ann.Cas. 236. * * *

"It is also contended by appellant[s] that the stipulation restricting the liability of the insurer, in the event of suicide of the insured within one year, is repugnant to the prior and unconditional promise to pay the face of the policy, in event of death of the insured, and that in such conflict the restrictive provision will not be enforced. We conclude, however, that the contention cannot be sustained. * * *"

The opinion further gives effect to the rule that if the provisions in the two clauses were doubtful in their meaning, or the language was ambiguous and created an uncertainty as to the intentions of the parties, they would be construed most strongly against the insurer, but went on to say: "But since its purpose is plain and clearly expressed, it must be given effect in accordance therewith. The restrictive provision was authorized by statute and is valid. Article 4742, R.S.1911 [now article 4733, R.C.S.1925]; Illinois Bankers' Life Ass'n v. Floyd (Tex.Com.App.) 222 S.W. [967] 968."

The court in that case affirmed the judgment of the trial court, in which the plaintiff had failed to recover.

Stean v. Occidental Life Ins. Co., N.M. Sup.Ct., supra, was a case in which the company had issued a policy on the life of plaintiff's husband, which policy contained a provision rendering the contract incontestable after one year, except for non payment of premiums; it contained another provision to the effect that if the insured died from suicide within two years from the date of the policy the liability of the company should not exceed the amount of premiums paid. More than a year from the issuance of the policy and within less than two years, the insured died, a suicide. All premiums had been paid, and the policy was in full force and effect. The company resisted payment of a greater sum than the total premiums paid, and this amount is tendered. It is difficult to describe a case more like the one before us.

The court there held that the defense based on the suicide clause was not precluded by the existing "incontestability" clause; that such a defense was not in fact a contest of the validity of the insurance contract as contemplated when the company agreed not to contest the policy after one year; but rather it was a contest for or in favor of the terms of the policy; that both the appellant and appellee were contending for the enforcement of the policy as written. Citing Childress v. Fraternal Union of America, Tenn.Sup., supra; Court of Honor v. Hutchens, Ind. App., 79 N.E. 409; North American Union v. Trenner, 138 Ill.App. 586.

The case of Childress v. Fraternal Union of America, Tenn.Sup., supra, involved a similar question to that here under consideration. In that case the policy contained a provision which, in effect, made the policy incontestable after two years. It also contained a provision which, in effect, provided that if the insured died as a result of suicide, the insurer's liability should be one-third of the amount otherwise due at the death of the insured. In discussing the case, the court said [page

833]: "* * * So that the only question left us to consider is whether suicide is embraced within the terms of the exceptions contained in the incontestable clause."

The court further reasoned:

"The incontestable clause in the policy is, in substance, that the validity of the policy will not be questioned after the expiration of two years, except upon the ground of false answers made in the application as to age, occupation, and the use of alcoholic stimulants. Upon these grounds it may be questioned at any time.

"But the suicide clause is not one which enters into the original validity of the contract, but one which defeats the right of recovery after the full existence of the contract is established.

"The incontestable clause has no reference to the suicide clause, and the latter is in no wise affected by the former. If the insured commit suicide after the expiration of two years from the date of the policy, the effect is the same as if it occur within two years."

The case of Scales v. Standard Life Ins. Co., 155 Tenn. 412, 295 S.W. 58, 55 A.L. R. 537, involved the construction of a policy which contained almost identical conditions of incontestability and suicide as those in the case at bar, with the single exception that each provision was limited to the end of two years from the date of the policy, as was provided in the Howard Case, supra. The court there held as it did in the Childress Case, supra, and cited many authorities in support thereof, including the Howard Case from this state, from which case we have quoted at length. The court acknowledges in that opinion the citation by the appellant of many authorities from other jurisdictions, as was done in the case under consideration by us. Such cases as Mareck v. Mutual Reserve Life Ass'n, 62 Minn. 39, 64 N.W. 68, 54 Am.St.Rep. 613, and Northwestern Mutual Life Ins. Co. v. Johnson, 254 U.S. 96, 41 S.Ct. 47, 65 L.Ed. 155, were there mentioned as apparently holding that the incontestability clause would control over the suicide clause; but it is pointed out that in those cases, there was no limit of time placed on the suicide clause considered, and therefore had no application, when a contract in fact limited the time within which each would be effective. We mention the two above cases for the reason that appellee has cited them in the instant

appeal, as authority to sustain his contention.

Texas Prudential Ins. Co. v. Wiley, Tex. Civ.App., 80 S.W.2d 1024, in which a writ of error was dismissed by the Supreme Court, supports our conclusions reached in this case. There, the company issued a policy on the life of Wiley's son, payable to Wiley, which provided it should be incontestable after two years from issuance, except for nonpayment of premiums. The contract also provided that if the policy should lapse for nonpayment of premiums, it could be reinstated upon furnishing satisfactory proof to the company of the insurability of the insured and payment of all arrears; it contained this further provision [page 1026]: "Provided no claim whose cause had its beginning prior to five weeks after date of the last reinstatement can ever accrue under this insurance." In that case, the insured permitted his policy to lapse for nonpayment of premiums and was reinstated by the company under the terms of the policy. Insured died as the result of gunshot wounds within five weeks after reinstatement. The company resisted payment on account of the provision which we have quoted, relating to death within five weeks after reinstatement. The beneficiary contended, as does the plaintiff in the instant case, that the incontestable provision superseded and nullified the clause which exempted the company from liability if death ensued from a cause arising within five weeks after reinstatement. The trial court found with the contention of the plaintiff in that case, holding that the provision against contest of the policy rendered nugatory the other provision relied upon by the insurer. In discussing the effect of the provision against contest upon the defense pleaded by the company, the appellate court said: "Appellant [the insurer] is not seeking for any cause to nullify the efficacy of the policy as originally contracted, but is insisting that the very terms of the policy knowingly contracted should be enforced. As we view it, the question is not one of contesting the policy, but one of enforcing it according to its specific provisions." The Howard Case, supra, is cited and followed by the court in the case from which we have last quoted.

We believe the rule announced in Field v. Western Indemnity Co., Tex.Civ.App., 227 S.W. 530, writ refused, supports the conclusions reached by us. The insurer issued its policy on the life of Fields for

a stated amount; the contract provided in effect that it was incontestable after one year, except for breach of warranty or fraud in the application and for nonpayment of premiums; it further provided that if the insured should engage in the military or naval service in time of war without the written consent of the insurer, the latter's liability should be only the amount paid in premiums, in case of death of the insured.

Fields entered military service in time of war without the written consent of ,the company, and died more than a year after the policy was issued. The court held the incontestability clause did not preclude the enforcement of the subsequent conditional stipulation for a lesser sum at the death of the insured under those conditions.

 A contract by which a company agrees to insure the life of a person, as a rule and as in this case, sets out on the first page a general statement that it will pay the beneficiary so much at the death of the insured, subject to the further conditions and provisions of the contract. So long as those further provisions and conditions do not infringe the laws of the state made and provided for such contracts, exceptions and conditions may subsequently be contained in the further provisions of the obligation. Under such conditions it is impossible that all matters affecting liability can be spoken in a word, line or even a paragraph; but the very fact that the contract so states in connection with the general promise to pay, is notice to the insured that all the subsequent conditions are to become a part of the contract and is notice to him that they are such. Hence, the often announced rule of construction that the instrument as a whole must be considered together. No lengthy contract could be intelligently written without breaking it up into paragraphs; each paragraph and clause becomes a part of the whole, and must be considered. To ascertain the meaning of a contract, as an expression of the intentions of the parties, each provision must be accorded its reasonable, natural and probable meaning, when considered in relation to the whole. We cannot seek to find some technical basis for finding an ambiguity when a reasonable interpretation will permit all to prevail. We believe that when parties have agreed to a state of conditions, such as we find in the two provisions here under consideration, the agreement that the insurer would pay $5,000 upon the death of the insured, provided the premiums were kept paid, and that it would not contest such pay-

ment after one year, that promise was qualified by the further condition and provision that if death ensued from suicide within a year, the insurer's liability should be only for an amount equal to the sum previously paid in premiums.

To better illustrate our belief that the incontestable and suicide clauses are separate, and distinct, and that the latter is an exception to the former, we again refer to the Howard Case, supra, where the two periods are for the same duration. In such circumstances, for the company to avail itself of the incontestable clause, it would be required to institute a proceeding within one year, either by a direct action or defensively, to avoid the policy on some justifiable grounds. While in case death ensued by suicide within the year and no suit was instituted by the claimant within that time for the face of the policy, the insurer would not be called upon to presume the beneficiary would claim more than the amount agreed between the parties would be collectible, and hasten to institute proceedings within the year to establish that fact, but would be warranted in assuming that the beneficiary would rely upon the terms of the contract, and if and when more is claimed, could then urge the defense of that provision in the policy as against a greater claim.

To insist upon the latter provision, as was done here, is not to contest the validity of the contract of insurance, but is no more than a contention that the company desires to perform it. The authorities from which we have quoted sustain these conclusions, and in addition to those cases already mentioned, others of like import may be added, such as Myers v. Liberty Life Ins. Co., 124 Kan. 191, 257 P. 933, 55 A.L.R. 542, and notes thereunder; Woodbury v. N. Y. Life Ins. Co., 129 Misc. 365, 221 N.Y.S. 357; Starck v. Union Central Life Ins. Co., 134 Pa. 45, 19 A. 703, 7 L.R.A. 576, 19 Am.St. Rep. 674; Hearin v. Standard Life Ins. Co., D.C. Ark., 8 F.2d 202; Mack v. Conn. Gen. Life Ins. Co., 8 Cir., 12 F.2d 416; Wright v. Philadelphia Life Ins. Co., D.C. S.C., 25 F.2d 514.

Past experiences in litigation with life insurance companies warranted the timely provisions of Article 4733, R.C.S., which, insofar as applicable here, reads: "No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company incorporated under the laws of this State, if it contains any of the following

provisions: * * * 3. A provision for any mode of settlement at maturity of less value than the amounts insured on the face of the policy, plus dividend additions, if any, less any indebtedness to the company on the policy, and less any premiums that may, by the terms of the policy, be deducted. Any company may issue a policy· promising a benefit less than the full benefit in case of death of the insured by his own hand while sane or insane, or.by following stated hazardous occupations. * * *"

In American Nat. Ins. Co. v. Hawkins, Tex.Civ.App., 189 S.W. 330, the court had under consideration a policy which provided [page 331]: "One-half only of the above sum payable if death occur within six calendar months from date, and the full amount if death occur thereafter." The quoted provision was held to be in violation of the inhibitions of Article 4733, R.C. S., above quoted. In this connection, the court said: "Thus there is intended to be imposed by the act, the requirement that the form in which the contract or agreement is cast or incorporated in the policy, may not be misleading as to the amounts of insurance payable on the death of the insured. The insurance company is left free to agree upon the amount of insurance, but is required to state in the policy in the form of a single provision the sum of money agreed to be payable in the event of the death of the person whose life is insured, *except as pertains to suicide or stated hazardous occupation."* (Italics ours). The Hawkins Case, from which we have quoted, did not reach our Supreme Court, but construing a policy containing like provisions, the Supreme Court, in First Texas State Ins. Co. v. Smalley, 111 Tex. 68, 228 S.W. 550, confirmed the rule and cited the Hawkins Case, with approval.

In the last cited case the Supreme Court, speaking through Justice Greenwood, discussed the provisions of Article 4733, R. C.S., and especially Sect. 3, and this was said [page 551]: "The Legislature deemed it necessary to except from the operation of the statute provisions for the reduction of promised benefits where the insured met his death by his own hand or by the pursuit of a hazardous occupation. The exceptions make plain the intent that the statute should apply in all cases not excepted, and remove any doubt as to the correctness of our interpretation."

In view of these holdings, we do not believe the suicide exception or limitation of liability for a stated time, as in this case, need be incorporated in the incontestable clause before it can become available to the company as a defense to a claim for death occurring from suicide within the time agreed upon. That being an exception from rule covered by the statute, the provision did not conflict with the statute. It was therefore a legal provision and did not render the policy ambiguous in its terms.

Appellee (plaintiff below) is not without precedent from courts for his contention in this case. He relies largely upon Mutual Reserve Fund Life Ass'n v. Payne, Tex.Civ.App., 32 S.W. 1063. We note that case did not reach our Supreme Court in any form. There, the contract sued on provided in one paragraph that after the policy had been in effect for five years, it should be incontestable for any cause save for nonpayment of premiums. Another paragraph provides as follows: "Death of a member by his own hand, whether voluntarily or involuntarily, sane or insane at the time, is not a risk assumed by the association in this contract, * * *." The insured died from suicide after the policy had been in effect five years. The court there held the suicide clause was not available as a defense to the company, because of the incontestability. clause. The opinion declares that the incontestability clause should prevail over the suicide clause, because the company contracted to pay the face of the policy and agreed not to contest it after five years; that the suicide clause which, as stated, provided that death on that account was a liability not assumed, should be construed as a proviso to the incontestable clause, and when the time for contest expired the provision likewise became ineffective. There are certain phases of that opinion applicable here, but, as we view the contract under consideration before us, with much deference to the court pronouncing the holdings above, we cannot follow them. It will be observed that to support the rule announced, it became necessary to read into the contract a liability to the company which, by the plain words of the policy, it did not assume, and, of course, this was assented to by the insured. Courts will not make contracts for parties, but will only construe their intentions from what is written and impliedly agreed to at the time they enter into them. The Payne Case, supra, was decided in 1895, and long prior to the passage of Article 4742, R.C.S., of 1911, now R.C.S. Art. 4733, passed in 1909. The provisions of the last named article,

effective when the contract here under consideration was made, specifically permit the making of the contract relied upon by the appellant company; having brought itself within that statutory provision, we can see no reason why the limitation of its liability thereunder should not be recognized by the courts.

Appellee cites us to cases from other jurisdictions holding as did the court in the Payne Case, as follows: Mareck v. Mutual Reserve Fund Life Ass'n, 62 Minn. 39, 64 N.W. 68, 54 Am.St.Rep. 613; Fore v. N. Y. Life Ins. Co., 180 Ark. 536, 22 S.W.2d 401, 67 A.L.R. 1358; Simpson v. Life Ins. Co., 115 N.C. 393, 20 S.E. 517; Bernier v. Pacific Mutual Life Ins. Co., 173 La. 1078, 139 So. 629, 88 A.L.R. 765, and cases from the courts of Alabama, Illinois, Iowa and Kansas, to which may also be added the case of Sun Life Ins. Co. v. Taylor, 108 Ky. 408, 56 S.W. 668, 94 Am.St.Rep. 383. We have reviewed these cases carefully and find that some of them are only remotely and incidentally favorable to plaintiff's contention, while others hold as did the Court of Civil Appeals in the Payne Case, supra.

Much reliance is placed upon the rule announced in the Fore Case, supra, by the Supreme Court of Arkansas; there three of the seven Justices dissented from the majority opinion, asserting what we believe to be the correct rule. The majority opinion, however, held that in a case where the policy contained both an incontestable clause and suicide clause expiring at the end of two years, and suicide occurred within that time, the incontestable clause precluded the insurer from relying upon the suicide clause, because it was not plead and urged within two years. In other words, as we have before suggested, that to avail the insurer of the suicide clause, it must either institute a suit to avoid the policy or plead in response to a claimant's petition, that defense within the period of time allowed for "contest." We do not believe the reasoning sound.

Viewing this appeal as we do, and considering the controverted provisions of the contract along with our statutory regulations and provisions applicable, we hold the trial court erred in his conclusions of law, wherein he found that the two provisions rendered the contract ambiguous and required a construction of the policy most strongly against the insurer, so as to prevent it from asserting as a defense that part pertaining to suicide.

The facts are uncontroverted, and the appeal presents only a question of law for our determination, and if our conclusions are correct that there is no theory in the case by which the plaintiff below can recover more than the amount tendered by the insurer, it becomes our duty to render such judgment as the trial court should have entered. Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178. The judgment of the trial court is therefore reversed and judgment here rendered that plaintiff take judgment only for the amount shown by the stipulated facts to have been paid as premiums, together with interest thereon, at six per cent per annum. The amount, it is agreed, was tendered to plaintiff prior to the institution of this suit, and therefore the costs of this appeal and the costs below are taxed against the appellee. It is accordingly so ordered.